# IN THE COURT OF APPEALS OF IOWA

No. 20-1033
Filed November 4, 2020

**IN THE INTEREST OF R.S.,**
**Minor Child,**

**D.P., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

A mother appeals the juvenile court order terminating her parental relationship with her toddler son. **AFFIRMED.**

David Barajas of Macro & Kozlowski, LLP, West Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Erin Mayfield of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and May and Schumacher, JJ.

**TABOR, Presiding Judge.**

Just shy of two years old, R.S. showed signs of distress. Aggression, head-banging, and trouble sleeping coincided with the advent of video visits with his parents, who were both incarcerated. The juvenile court terminated the parental rights of the mother and father. Only the mother, Danielle, appeals. She contends the State failed to prove she could not resume care of R.S. Danielle also asserts termination is not in the child's best interests because he recognizes her as his mother. Like the juvenile court, we find clear and convincing evidence in the record that Danielle's substance abuse and criminality has prevented her from being a safe parent for R.S.[1] Moving him toward adoption by his aunt and uncle is in R.S.'s best interests. Thus, we affirm.

### I.     Facts and Prior Proceedings

Danielle was not in a good position to parent R.S. when he was born in late September 2018. She had been in the Polk County jail awaiting trial on drug and burglary charges for the final two months of her pregnancy. After giving birth, Danielle agreed to place the infant with his paternal grandmother. But the Iowa Department of Human Services (DHS) removed R.S. from the grandmother's care in early October when workers found her home unsafe because of the exposure to drugs and violence. In November, the juvenile court adjudicated R.S. as a child

---

[1] We review termination orders de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). The State must show by clear and convincing evidence the statutory grounds to support termination. *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014). Our top priority is the child's best interests. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (identifying safety and the need for a permanent home as the "defining elements" in the best-interests determination).

in need of assistance (CINA). The next month, the court placed R.S. with his aunt and uncle.

About the same time, Danielle received a suspended prison sentence with inpatient drug treatment as a condition of her probation. She completed inpatient treatment in early 2019 and moved to transitional housing. While there, the DHS allowed Danielle an extended home visit with R.S.

But after several months, Danielle left transitional housing. Outside that setting, she "struggled to maintain stable housing." As part of that struggle, she stayed with R.S.'s father at the paternal grandmother's home, a location the DHS deemed unsafe. In November, Danielle called the police because "her boyfriend and his mother attempted to kick her out of the house." When officers responded, they noticed injuries to the father's face. Police charged Danielle with assault, though the State later dismissed the charge.

After that incident, R.S. returned to the care of his aunt and uncle. Meanwhile, Danielle "absconded" from probation supervision. She did not see her probation officer from late November 2019 through March 2020. She also had no visits with R.S. during those four months. From mid-March through mid-April, Danielle was back in jail. And her pretrial release in April was short-lived. Just one day after leaving jail, another warrant issued for her arrest on probation violations. Not until late April did she have a supervised video visit with R.S. After that visit, the DHS told Danielle that she would have no more visits until she addressed the active arrest warrant.

Following these events, the State petitioned for the termination of Danielle's parental rights. But Danielle continued to spiral downward. In May, police

stopped her while she was driving a stolen Tahoe on a barred license. Police found syringes containing methamphetamine in the vehicle. After that arrest, Danielle underwent a substance-abuse evaluation, during which she admitted to daily use of methamphetamine and marijuana. The evaluator recommended inpatient treatment at the House of Mercy. But Danielle remained in jail.[2]

The juvenile court held a combined permanency and termination hearing in July 2020.[3] The State offered twenty-one exhibits, but no witnesses. Danielle's attorney did not object to the lack of testimony. The court made a record of Danielle's decision to not testify at the hearing but to submit her position through counsel's arguments. Danielle participated in the hearing from jail. Her attorney argued: "[I]t is my client's ultimate relief that we are seeking a six-month extension to allow her to have [R.S.] back in her care." *See* Iowa Code §§ 232.104(2)(b) (allowing court to delay permanency if need for removal will no longer exist at the end of that time), .117(5) (authorizing the court, following a termination hearing, to enter an order in accordance with section 232.104 in lieu of terminating parental rights).

The juvenile court denied that request to delay permanency. Instead, the court terminated Danielle's rights under Iowa Code section 232.116(1)(e), (g), and (h) (2020). The court also decided, "The State has established by clear and convincing evidence that termination of parental rights is in the best interest of the

---

[2] Danielle had another video visit with R.S. in May 2020. It did not go well. R.S. covered his face and would not look at the camera. He then tried to end the visit by pushing buttons on the tablet.

[3] The court conducted the hearing using remote technology because of the pandemic. *See* Iowa Supreme Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services* (May 22, 2020).

child and less detrimental than the harm caused by continuing the parent-child relationship."  Danielle now appeals.

## II.    Analysis

Danielle contends the record does not support any of the three grounds underlying the termination decision.  To affirm, we need only find a basis to terminate under one of the provisions cited by the juvenile court.  *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).

Today, we focus on paragraph (h).[4]  Danielle challenges only the sufficiency of the evidence supporting the fourth element—that R.S. could not be returned to her custody at the time of the termination hearing.  *See* Iowa Code § 232.116(1)(h)(4).  She contends, "While the termination trial was pending [she] was actively attempting to have her jail conditions modified," so she could attend inpatient treatment at the House of Mercy where R.S. could reside with her.

Danielle's appellate argument departs from her position at trial.  At trial, she recognized that reunification could not take place "at the present time."  *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" to mean

---

[4] The court may order termination if it finds these four elements are supported by clear and convincing evidence:
>     (1) The child is three years of age or younger.
>     (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>     (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
>     (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

"at the time of the termination hearing"). Her attorney conceded the State met the grounds for termination but asked the juvenile court for leeway to deal with her legal troubles. Her counsel asserted:

> She is currently contesting her criminal charges, and she is hopeful and anticipates to either have them dismissed or be found not guilty at trial. The sticky part of this is we're in the coronavirus, and we don't know when she's going to have a trial. . . . [I]t's anticipated they will be trying this case hopefully in the fall.

Counsel argued it was "very possible" that within six months Danielle could be at the House of Mercy and resume care of R.S.

We decline to grant Danielle relief on the new issue raised on appeal. Termination was proper under section 232.116(1)(h).

Danielle also argues termination was not in R.S.'s best interests because he has a strong attachment to her. We analyze a child's best interests under the framework in Iowa Code section 232.116(2). *See In re P.L.*, 778 N.W.2d 33, 40–41 (Iowa 2010). That provision considers the child's safety, as well as the best placement for furthering his "long-term nurturing and growth" and his "physical, mental, and emotional condition and needs." *See* Iowa Code § 232.116(2). Under that framework, we may consider the child's integration into his foster family. *See id.* § 232.116(2)(b).

Like the juvenile court, we are concerned that R.S. began exhibiting "aggressive behaviors, sleep issues, and self-harming tendencies" when he resumed contact with his parents. We have no doubt Danielle loves R.S. But their bond frayed when she missed visits because of her drug use and criminality. By contrast, R.S. finds comfort in his kinship placement. The State offered exhibits showing his aunt and uncle have taken good care of R.S. *See In re Z.P.*, 948

N.W.2d 518, 525 (Iowa 2020) (considering child's bond to foster family).  On this record, we find termination is in R.S.'s best interests.

**AFFIRMED.**